UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOMAS BLASBERG, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 18 C 1386 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant/Cross-Claim Plaintiff, | ) | |
| | ) | |
| JORDAN WISNIEWSKI, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff/ | ) | |
| Cross-Claim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRACEY WISNIEWSKI, | ) | |
| | ) | |
| Defendant. | ) | |

### **MEMORANDUM OPINION AND ORDER**

Tomas Blasberg brought this suit against Jordan Wisniewski, his wife Tracey Wisniewski, and the City of Chicago after Jordan—a law enforcement officer with the Chicago Department of Aviation—shot Blasberg in the abdomen. Doc. 7. The City cross-claimed against Jordan for a declaration that he was not acting within the scope of his employment at the time and therefore that it need not indemnify him under 745 ILCS 10/9-102 for Blasberg's claims. Doc. 34 at pp. 9-11. And Jordan counterclaimed against Blasberg for allegedly firing an air gun at Jordan's vehicle and running his car into Jordan. Doc. 63.

On the City's motion, the court dismissed without prejudice Blasberg's claims against the City—which alleged that it was vicariously liable under state law respondeat superior principles for Jordan's conduct—and granted the City judgment on the pleadings on its cross-claim against

1

Jordan. Docs. 61-62 (reported at 2018 WL 3046867 (N.D. Ill. June 20, 2018)). Blasberg then filed an amended complaint, adding allegations to support his theory—essential to his vicarious liability claims against the City—that Jordan was acting within the scope of his employment when he shot Blasberg. Doc. 65.

The City moves under Civil Rule 12(b)(6) to dismiss the amended complaint's claims against it. Doc. 72. The motion is granted.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Blasberg's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Blasberg as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

On June 8, 2017 at approximately 9:00 p.m., Jordan—who was employed as an Aviation Special Police Officer for the Chicago Department of Aviation—was driving in his personal car on Deerfield Road in Buffalo Grove, Illinois. Doc. 65 at ¶¶ 8, 11-12, 18; Doc. 72-1 at § I/3.4. His wife Tracey was his only passenger. Doc. 65 at ¶ 20. Blasberg passed Jordan in oncoming traffic. *Id*. at ¶¶ 21, 23. Jordan submits that Blasberg fired an air gun at Jordan's car as the two

passed one another.  Doc. 63 at ¶¶ 6-10; Doc. 76 at 8.  Jordan made a U-turn to pursue Blasberg, caught up after a mile and a half, and stopped his car in front of Blasberg's.  Doc. 65 at ¶¶ 23-24, 27.  Jordan then exited his car, pointed a handgun at Blasberg, and fired through the windshield.  *Id*. at ¶¶ 28-29.  The bullet struck Blasberg in the abdomen.  *Id*. at ¶ 29.

Jordan's Department of Aviation employment manual states that Aviation Special Police Officers are stationed at O'Hare International Airport or Midway International Airport, where they are "responsible for the protection of the public, travelers and employees at the airport and of airport facilities, grounds and roadways."  Doc. 65 at ¶¶ 14-15; Doc. 72-1 at §§ I/1.2, /3.4.  The manual sets out the authority of Aviation Special Police Officers as follows:

> Aviation Special Police Officers will be state certified law enforcement officers.  They will be commissioned by the Superintendent of the Chicago Police Department as Special Police Officers and will have the authority to make arrests while enforcing state laws and City of Chicago ordinances as specified by the Managing Deputy Commissioner, Security, while on Department of Aviation property.  They will not interfere in any police department investigation; however, they will respond to incidents and summon police whenever the need arises.  They will effectively and unobtrusively interact with police during these incidents.  Every Special Police Officer will conform to and be subject to all the rules and regulations governing Police Officers of the City of Chicago, and to such additional rules and regulations as the Superintendent of Police may make concerning Special Police.  **Special Police will possess all the powers of the regular police patrol at the places for which they are respectively appointed or in the line of duty for which they are engaged.**  (Municipal Code of Chicago, 4-340).

Doc. 72-1 at § I/5.  Blasberg interprets the Chicago Police Department's regulations—to which the above-quoted section of the manual refers—to require Chicago police officers to "prevent, address or otherwise respond to crimes" that they believe have been committed in their presence, "whether within or without the jurisdictional limits of the City of Chicago."  Doc. 65 at ¶ 16.  Jordan believed that Blasberg had committed a crime in his presence by firing an air gun at his car, and therefore that the manual—in particular, its reference to Chicago Police Department

3

regulations—obligated him to respond. Doc. 63 at ¶¶ 6-10; Doc. 65 at ¶ 31. Jordan claims that after exiting his vehicle but before firing his gun, he flashed his police badge and yelled "Police! Police!" Doc. 65 at ¶ 30.

## Discussion

The amended complaint brings state law negligence, assault, and battery claims, as well as a claim under 42 U.S.C. § 1983, against Jordan. Doc. 65 at pp. 6-12. On the assault and battery claims, Blasberg alleges that the City is vicariously liable for Jordan's conduct under the respondeat superior doctrine. *Id*. at pp. 8-10. The City moves to dismiss Blasberg's vicarious liability claims. Doc. 72.

"For an employer to be vicariously liable for an employee's torts under the doctrine of respondeat superior, the torts must have been committed within the scope of the employment." *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989). "To ascertain when an employee's conduct is within the scope of employment, the Illinois Supreme Court has adopted § 228 of the Restatement (Second) of Agency." *Copeland v. Cnty. of Macon*, 403 F.3d 929, 932 (7th Cir. 2005) (citing *Pyne*, 543 N.E.2d at 1308). Section 228 provides in pertinent part:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits; [and]
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master … .

Restatement (Second) of Agency § 228 (1958). Each of these three requirements must be satisfied to find that an employee acted within the scope of his employment. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009).

Blasberg cannot satisfy the first requirement because his factual allegations do not plausibly suggest that attempting to effectuate an arrest using a firearm was conduct of the kind

that the Department of Aviation employed Jordan to perform. As recently held by an administrative law judge ("ALJ") for the Illinois Labor Relations Board ("ILRB")—the state agency that adjudicates labor disputes between the City and its employees, *see* 5 ILCS 315/5(b); Ill. Lab. Relations Board, https://www2.illinois.gov/ilrb/Pages/default.aspx (last visited Oct. 31, 2018)—Aviation Special Police Officers, also known as "Aviation Security Officers" or "ASOs," "are not armed." *SEIU, Local 73*, No. L-CA-17-051, slip op. at 8 (ILRB Local Panel July 2, 2018) (Doc. 72-3 at 8).

Consistent with the ALJ's ruling, Blasberg concedes that Jordan "was not allowed to carry a gun on airport property," but he argues that because Jordan was required to maintain a firearms qualification and permitted to carry a gun while off duty, the scope of his employment included carrying a gun outside the airport. Doc. 76 at 9. That argument is without merit. It does not follow from the fact that Jordan had *permission* to carry a gun off airport property that using a gun to effectuate an arrest off airport property was the kind of thing that the Department of Aviation *employed* him to do. *See Adames*, 909 N.E.2d at 757-58 (holding that a correctional officer's negligent storage of his guns at home was neither the kind of conduct he was employed to perform nor incidental to his employment, where the officer was required to annually qualify with firearms but did not carry a gun at work, was not required to carry a gun while off duty, and had no duty to respond to crimes observed while off the clock aside from calling 911). Thus, although the kind of work Jordan was employed to perform included "mak[ing] arrests … while on Department of Aviation property," Doc. 72-1 at § I/5—and thus without a firearm—those matters did not include making arrests with a firearm while off airport property. *See Adames*, 909 N.E.2d at 757-58; *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 993-94 (Ill. 2007) (holding that a hospital employee whose duties ordinarily included drawing blood, performing

5

drug screens, filing, billing, and delivering medical records to physicians' mailboxes was not engaged in the kind of conduct she was employed to perform when she "divulge[d] confidential patient information while off duty and after hours in a tavern," regardless whether her continuing duty to maintain confidentiality meant that the disclosure occurred substantially within the authorized time and space limits of her employment).

It follows that Blasberg cannot satisfy the first requirement for determining whether an employee's conduct falls within the scope of employment, and thus for finding that the City is vicariously liable under state law for Jordan's conduct. And even if Blasberg could satisfy that requirement, he cannot satisfy the second because his factual allegations do not plausibly suggest that Jordan's chasing and shooting him took place within the authorized time and space limits of Jordan's employment as an ASO with the Chicago Department of Aviation.

Blasberg alleges that the shooting occurred in Buffalo Grove, approximately fifteen miles from the nearest airport administered by the Department. The fact that Jordan was outside the Department's jurisdiction would not rule out vicarious liability if he had been ordered to drive to that area or went there on a minor detour from a work assignment, *see Anderson v. Moussa*, 250 F. Supp. 3d 344, 348 (N.D. Ill. 2017), but those possibilities are implausible given that he was driving his personal car with his wife as a passenger. The only plausible conclusion is that Jordan was outside the time and space limits of his employment when he encountered Blasberg. *See ibid*. ("Anderson points to no case in which a police officer who was *both* off-duty *and* far outside his employer's jurisdiction was held to be acting within the scope of his employment.").

Blasberg counters that Jordan, by way of the Department of Aviation manual, was subject to Chicago Police Department regulations requiring him to respond wherever and whenever he believed that a crime was committed in his presence. Doc. 76 at 3-5. Blasberg is incorrect.

Even assuming that those regulations impose a duty on Chicago police officers to respond to crimes wherever and whenever they see them, the manual's general reference to the regulations writ large—a general reference that does not advert in any way to the specific regulation that supposedly imposes that duty—cannot be read to extend that duty to ASOs. The same provision of the manual expressly confines ASOs' authority to the airport, conferring on them the "authority to make arrests … *while on Department of Aviation property*." Doc. 72-1 at § I/5 (emphasis added). Reinforcing the point, that provision cites the Chicago Municipal Code for the proposition that "Special Police will possess all the powers of the regular police patrol *at the places for which they are respectively appointed or in the line of duty for which they are engaged*." *Ibid*. (emphasis altered) (citing Chi. Mun. Code § 4-340). And to the extent any doubt remained, the provision of the manual setting forth the responsibilities of ASOs confirms that their duties are limited to the airport, explaining that they are "responsible for the protection of the public, travelers and employees *at the airport* and of *airport facilities, grounds and roadways*," and indicating that they will be "assigned to the air side and/or landside [sic] of the airport." *Id*. at § I/3.4 (emphasis added). The duties listed in that provision all involve access control at the airport, such as checking access badges, monitoring doors, and responding to access control alarms. *Ibid*.

The manual thus indisputably limited Jordan's authority and obligations to the airport; it was not part of Jordan's job to respond to crimes while off duty in Buffalo Grove. This interpretation is bolstered by the ALJ's holding in *SEIU, Local 73* that "any authority that the ASOs possess to enforce the law and maintain public order is, and has always been, limited to the airport property while they are on duty." No. L-CA-17-051, slip op. at 30 (Doc. 72-3 at 30); *see also ibid*. ("[T]he ASOs are not, and have never been, police or peace officers … ."). That

7

conclusion is entitled to "substantial weight and deference." *See Ill. Landowners All., NFP v. Ill. Commerce Comm'n*, 90 N.E.3d 448, 457, 462 (Ill. 2017) (noting that under Illinois law, a state agency's resolution of a legal question is reviewed *de novo* but "may be afforded substantial weight and deference … in recognition of the fact that agencies make informed judgments on the issues based upon their experience and expertise"); *Abrahamson v. Ill. Dep't of Prof'l Regulation*, 606 N.E.2d 1111, 1121-22 (Ill. 1992) (holding that a state agency's interpretation of a statute "deserved judicial deference"). Even without deference, the ALJ's view of ASOs' authority conforms with a plain reading of the employment manual.

Accordingly, Blasberg's factual allegations cannot plausibly satisfy two of the three requirements of respondeat superior liability. It follows that his vicarious claims against the City must be dismissed. *See Moss ex rel. Moss v. Singleton*, 110 F. Supp. 3d 876, 886 (N.D. Ill. 2015) (dismissing a vicarious liability claim where the plaintiff failed to allege facts sufficient to establish respondeat superior liability).

## Conclusion

The City's motion to dismiss is granted. Blasberg's vicarious liability claims against the City are dismissed. Because Blasberg has already had an opportunity to replead those claims after they were dismissed without prejudice earlier this year, this dismissal is with prejudice. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem … .").

November 1, 2018

United States District Judge